UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLTON WALKER et al.,

                              Plaintiffs,

           v.                                               9:23-CV-0206
                                                         (GLS/DJS)

NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND COMMUNITY
SUPERVISION et al.,

                              Defendants.
_____

APPEARANCES:

CARLTON WALKER
Plaintiff, pro se
85-A-1559
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

JERMELL McLEAN
Plaintiff, pro se
17-A-5095
Riverview Correctional Facility
PO Box 247
Ogdensburg, NY 13669

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

      Pro se plaintiffs Carlton Walker and Jermell Mclean commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized

Persons Act (RLUIPA), 42 U.S.C. § 2000cc.  Dkt. No. 1 ("Compl.").  The complaint was filed with an application to proceed in forma pauperis (IFP) made by McLean.  *See* Dkt. No. 3 ("McLean's IFP Application").  Thereafter, Walker paid the filing fee in full in lieu of separately requesting to proceed IFP.

By Decision and Order entered on June 8, 2023, this Court granted McLean's IFP Application, dismissed some of the claims and defendants from the action following a review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and found that certain other claims survived sua sponte review and required a response.  Dkt. No. 12 ("June 2023 Order").

Presently before the Court are the following: (1) a motion filed by Walker wherein he seeks partial reconsideration of the June 2023 Order, and injunctive relief, Dkt. No. 24 ("Omnibus Motion"); and (2) a letter filed by Walker wherein he requests an order directing officials within the New York State Department of Corrections and Community Supervision (DOCCS) to preserve any and all electronic recordings of Rastafarian meetings, classes, and services, Dkt. No. 28 ("Preservation Request").

## II.   OMNIBUS MOTION

Before the Court addresses the merits of Walker's Omnibus Motion, a brief discussion regarding future filings in this case is necessary, particularly in light of Mclean's recent transfer to a new correctional facility.

Walker and Mclean chose to commence this action together.  The Court advised them in the June 2023 Order that they are each "required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address" and that "any documents" filed by either of them must "contain each plaintiff's signature in accordance with Fed. R. Civ. P.

11(a)."  June 2023 Order at 42.  The Court further advised plaintiffs that any document filed by either of them "that does not contain each plaintiff's signature may be stricken by the Court."  *Id*.  Despite these express warnings, Mclean failed to notify the Court of his change of address following his transfer to Riverview Correctional Facility, and Walker filed both the Omnibus Motion and the Preservation Request without Mclean's signature.  *See* Dkt. Nos. 19, 24, 28.

In light of Mclean's failure to communicate with the Court since mail was returned to him as undeliverable on July 26, 2023, *see* Dkt. No. 19, it is unclear whether he wishes to continue with this lawsuit.  Furthermore, in light of Mclean's failure to sign the Omnibus Motion, it is unclear whether he supports the entirety of this motion, which includes a request from Walker that he be allowed to proceed with an equal protection claim by himself.  *See* Dkt. No. 24-1 at 3-5.  Accordingly, the Court will direct Mclean to advise the Court, within thirty (30) days of this Decision and Order, whether he wishes to remain a party to this proceeding.

In the event Mclean wishes to proceed as a plaintiff in this action, the Court has several concerns with allowing this case to continue in its current form.  First, DOCCS does not allow inmates to correspond with each other without special approval.  *See* Directive No. 4422(IV)(B)(6).  This, in turn, creates efficiency problems with respect to discovery demands – with the possibility of each plaintiff serving counsel with demands at different times and/or one plaintiff wishing to supplement the demands of another – as well as with respect to motion practice.  It also prevents the plaintiffs from being able to comply with Rule 11's signature requirement.

Second, there is always a possibility in any case pursued by two or more individuals

3

that interests may not be aligned, particularly as it relates to a potential settlement of existing claims. This is especially true in this case because at least some of the claims in the complaint are brought on behalf of only Walker.

Third, credibility issues may arise insofar as different testimony is offered by the plaintiffs with respect to the same issue or subject, either during a deposition or at trial. While the Court does not currently have this concern, it is also not an issue that is easily resolvable should it arise.

Accordingly, in the event Mclean wishes to proceed as a plaintiff in this case, the Court intends to invite briefing on the issue of severance from both plaintiffs and the defendants following the completion of service. Against this backdrop, the Court will consider the merits of Walker's Omnibus Motion out of an abundance of solicitude.

### A. Request for Partial Reconsideration

#### 1. Relevant Legal Standard

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *See Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). The standard for granting a motion for reconsideration is strict. *See Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving

4

party seeks solely to relitigate an issue already decided." *Id.*[1]  Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

### 2. Overview of the Complaint and June 2023 Order

Plaintiffs' complaint asserts Section 1983 claims based on alleged wrongdoing experienced by Walker at certain times before he was transferred to Franklin Correctional Facility in June 2020, and by both plaintiffs during their incarceration together at Franklin Correctional Facility, related to Rastafarian religious services and practices.  *See generally* Compl.

The complaint was construed to assert the following claims against DOCCS, two of its divisions, a former Rastafarian Chaplain, the Ba Beta Kristiyan Church, and numerous state actors in their individual and official capacities: (1) RLUIPA claims on behalf of both plaintiffs; (2) First Amendment free exercise claims on behalf of both plaintiffs; (3) First Amendment establishment claims on behalf of both plaintiffs; (4) First Amendment retaliation claims on behalf of Walker; (5) Fourteenth Amendment equal protection claims on behalf of both plaintiffs; and (6) claims arising under New York Correction Law § 610 and the New York State Constitution.  *See* June 2023 Order at 9-10.

After reviewing the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court dismissed plaintiffs' class action allegations, as well as several claims asserted on

---

[1] Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d at 257.

behalf of Walker alone, and found that the following claims survived sua sponte review and required a response: (1) Walker's free exercise claims against defendants Rose, Stewart, and Morris arising between 2015 and 2017, based on alleged policies and practices related to Rastafarian ceremonial restrictions (other than marijuana use) during Walker's incarceration at Otisville Correctional Facility that impacted his ability to practice his religion; (2) Walker's free exercise claims against defendants Yelich, Barton, Rose, Stewart, Morris, and McKoy based on alleged policies and practices related to Rastafarian ceremonial restrictions (other than marijuana use) and facilitator assignments during Walker's incarceration at Bare Hill Correctional Facility that impacted his ability to practice his religion; (3) Walker's establishment claims against defendants Yelich, Barton, Rose, Stewart, Morris, and McKoy based on alleged policies and practices related to facilitator assignments during Walker's incarceration at Bare Hill Correctional Facility that impacted his ability to practice his religion; (4) plaintiffs' free exercise claims against defendants Barton, Danforth, Tourville, Quimby, McKoy, Morris, Stewart, and Rose based on alleged policies and practices related to Rastafarian ceremonial restrictions (other than marijuana use) and facilitator assignments during plaintiffs' incarceration together at Franklin Correctional Facility that impacted their ability to practice their religion; (5) plaintiffs' establishment claims against defendants Barton, Danforth, Tourville, Quimby, McKoy, Morris, Stewart, and Rose based on alleged policies and practices related to facilitator assignments during plaintiffs' incarceration together at Franklin Correctional Facility that impacted their ability to practice their religion; and (6) plaintiffs' RLUIPA claim against DOCCS seeking injunctive relief based on alleged wrongdoing that is ongoing at Franklin Correctional Facility and impacting their ability to practice their religion.  *See* June 2023 Order at 10-42.

As is relevant to the current motion, the Court dismissed plaintiffs' equal protection claims (brought on behalf of all Rastafarian inmates and/or a subset of Rastafarian inmates) related to facilitator assignments and religious services, as well as Walker's Section 1983 claims challenging the publication by the DOCCS Division of Ministerial, Family, and Volunteer Services (DMFVS) of certain promotional materials, and plaintiffs' First and Fourteenth Amendment claims challenging the constitutionality of DOCCS regulations or policies that prohibit all inmates from using marijuana, and require entry into drug treatment programs for those who do so. *See* June 2023 Order at 19-20, 28-29, 33-34.

### 3. Overview of the Motion for Reconsideration

Walker does not suggest that there has been an intervening change in the controlling law, nor has he presented new evidence which was not previously available. Instead, Walker argues that the Court erred in dismissing (1) plaintiffs' equal protection claims related to religious services and practices, (2) Walker's free exercise and equal protection claims related to the publication of certain promotional materials, and (3) plaintiffs' free exercise and equal protection claims challenging the DOCCS regulations or policies that prohibit Rastafarian inmates from using marijuana, and require entry into drug treatment programs for those who do so. *See* Dkt. No. 24-1 at 11-28, 47-51.[2]

According to Walker, the June 2023 Order failed to consider certain allegations in the complaint, which he believes plausibly suggest that the Rastafarian Mansion to which he and Mclean belong has, within the limitations period, experienced different treatment than

---

[2] Insofar as Walker alternatively requests that he be allowed to proceed with equal protection claims under a class-of-one theory, *see* Dkt. No. 24-1 at 3-5, the request is improper because (1) this is a multi-plaintiff action, (2) Mclean has not assented to this request, and (3) the alleged wrongdoing that forms the basis of the claim appears to have impacted both plaintiffs such that any class-of-one claim based on the current allegations in the complaint would fail as a matter of law.

Rastafarian inmates who belong to the Ba Beta Kristiyan Church. *See* Dkt. No. 24-1 at 11-28. Walker also argues that the Court "overlooked" certain allegations in dismissing the Section 1983 claims based on the DMFVS publication of certain promotional material and the DOCCS regulations or policies that prohibit Rastafarian inmates from using marijuana. *Id*. at 47-51.

### 4. Analysis

Insofar as Walker argues that the Court erred in dismissing plaintiffs' equal protection claims based on a difference in treatment between the Rastafarian Mansion to which they belong and the Rastafarian Mansion governed by the Ba Beta Kristiyan Church, the complaint lacks allegations explaining, in any level of detail, how members of these Mansions have been treated differently since Abuna Foxe "demitted office" in 2011. Instead, the complaint alleges facts such as the following: (1) while Abuna Foxe served as Chaplain through 2011, he "had liturgical materials prepare[d] . . . to meet the needs of his Church, but not for the plaintiffs and the rest of the Rastafarian Community within DOCCS"; (2) as a result of liturgical materials existing for the Ba Beta Kristiyan Church, "those in [that] Church are always provided with leadership, while the rest of the Rastafarian [inmates] within DOCCS are without [a] leadership role during services"; and (3) unlike plaintiffs' Mansion, "[t]he hierarchy of the Ba Beta Kristiyan Church does not include the title 'Elder' and there is nothing" in the DOCCS "religious Directives" that contemplate the title of Elder or "the responsibilities and functions of Elders to the Rastafarian within DOCCS who were not, and still are not govern[ed] by the Ba Beta Kristiyan Church." Compl. ¶¶ 240, 242, 253.

Although these allegations plausibly suggest that, at certain unidentified periods in time, Rastafarian inmates who were members of plaintiffs' Mansion were unable to obtain

8

"leadership role[s] during services," the complaint also alleges that for a period of time in 2021, Walker was assigned the role "facilitator" while incarcerated at Franklin Correctional Facility, and Mclean was "approved as the temporary facilitator" while Walker was away "on an extensive court trip" between December 2021 and February 2022.  Compl. ¶¶ 136-39, 146.  Moreover, the complaint does not allege that a different "facilitator" was assigned to lead a different Rastafarian Mansion at the same time that the plaintiffs assumed this role.  Nor does the complaint allege that the plaintiffs were limited in their ability to serve as facilitators based on their Mansion.

Simply put, the Court has no basis to plausibly infer from the allegations in the complaint that Rastafarian inmates who were members of plaintiffs' Mansion were unable to obtain "leadership role[s] during services" at any point within the limitations period, let alone that the failure to always assign a "leadership role" to members of plaintiffs' Mansion amounted to "purposeful discrimination" of a specific religious group.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (noting that to state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class"); *cf. Guillory v. Fischer*, No. 12-CV-0280 (LEK/RFT), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013) ("Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and [p]laintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons.").  Thus, Walker has failed to establish that the Court erred in dismissing plaintiffs' equal protection claims based on a difference in treatment between the Rastafarian Mansion to which they belong and the Rastafarian Mansion governed by the Ba

Beta Kristiyan Church.

The Court would add only that certain of plaintiffs' First Amendment claims that challenge restrictions on their religious practice as a result of facilitator assignments survived sua sponte review. *See* June 2023 Order at 38. While it does not appear from the allegations in the complaint that facilitator assignments are only adversely impacting one Rastafarian Mansion, as opposed to all Rastafarian inmates, in the event plaintiffs believe that their Mansion has intentionally been treated differently within the limitations period, as Walker appears to argue in his Omnibus Motion, the proper vehicle for pursuing this claim is an amended complaint with clear allegations of differences in treatment between various Mansions.

Insofar as Walker argues that the Court erred in dismissing plaintiffs' Section 1983 claims based on the DMFVS publication of certain promotional materials, he has failed to point to any allegations in the complaint which plausibly suggest that he and Mclean suffered any harm of a constitutional magnitude as a result of the creation of information materials with DOCCS and DMFVS letterhead instead of religious symbols that they desired. Indeed, although the allegations in the complaint make clear that plaintiffs generally take offense to the publication at issue, it is unclear from the allegations in the complaint how the published material substantially interfered with plaintiffs' ability to practice their religion and/or treated Rastafarian inmates differently than other similarly situated individuals. *See McLeod v. Williams*, No. 18-CV-115, 2020 WL 2512164, at *3 (S.D.N.Y. May 15, 2020) (noting that to succeed on a free exercise claim, an inmate must "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs" (citing *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019)); *see also Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir.

2006) (same); *Wilson v. City of New York*, No. 18-CV-2262, 2021 WL 5908860, at *4 (E.D.N.Y. Dec. 14, 2021) ("To demonstrate a 'substantial burden,' the plaintiff must show that 'the state has put substantial pressure on him to modify his behavior and to violate his beliefs.'" (quoting *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)); *Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) ("The relevant question in determining whether [the inmate's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the inmate's religious] practice."); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (explaining that, to state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class").

Furthermore, the complaint does not allege that any official knew or should have known that the promotional materials at issue might somehow prevent or interfere with either plaintiff's ability to practice their faith. *See, e.g.*, Compl. ¶¶ 305-16 (discussing alleged wrongdoing). In other words, the complaint also fails to allege any facts which plausibly suggest that the official(s) responsible for creating the promotional materials did so knowing that they would be placing a substantial burden on plaintiffs' religious practice. *See Kravitz v. Purcell*, No. 16-CV-8999, 2022 WL 768682, at *9 (S.D.N.Y. Mar. 14, 2022) ("[W]here a plaintiff advances a free exercise claim pursuant to § 1983, the plaintiff must establish that the defendant at least had reason to know 'the facts rendering [his conduct] illegal.'" (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)); *cf. Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *16 (S.D.N.Y. Mar. 29, 2019) (explaining that the defendant could not be held liable for failing to provide a religious accommodation where that

11

accommodation had not been requested).  Thus, Walker has failed to establish that the Court erred in dismissing his Section 1983 claims based on the creation and publication of certain promotional materials.

Finally, insofar as Walker argues that the Court erred in dismissing plaintiffs' Section 1983 claims based on the DOCCS regulations or policies that prohibit Rastafarian inmates from using marijuana, he has failed to explain how allowing one religious group to consume tobacco for ceremonial purposes while not allowing Rastafarian inmates to consume marijuana for ceremonial purposes amounts to different treatment in any respect. Furthermore, Walker has failed to offer any argument explaining why prohibiting inmates from using marijuana, and requiring inmates who are caught doing so to enter drug treatment programs, is not rationally related to legitimate penological interests in security and maintaining order, as this Court found in the June 2023 Order.  *See* June 2023 Order at 28-29.  Thus, Walker has also failed to establish that the Court erred in dismissing plaintiffs' Section 1983 claims based on the DOCCS regulations or policies that prohibit Rastafarian inmates from using marijuana.

In short, after thoroughly reviewing Walker's motion and affording it due consideration in light of his status as a pro se litigant, he has failed to present any basis for reconsideration of the June 2023 Order.  Moreover, based upon a review of the relevant law and its application to the facts of this case, the Court concludes that its previous decision was legally correct and did not work a manifest injustice.  Accordingly, Walker's motion for partial reconsideration of the June 2023 Order is denied in its entirety.

### B.     Request for Injunctive Relief

"In general, district courts may grant a preliminary injunction where a plaintiff

demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (explaining that a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

Walker seeks a preliminary injunction directing defendant Chaplain Stewart to "evict the vicious gang known as the Blood from the Rastafarian sacred circle." *See* Dkt. No. 24-1 at 28. According to Walker, "Rastafarian in DOCCS has become synonymous with the Blood [gang]" because defendant Stewart has "never done anything to make the gangs and their members aware that under her Chaplaincy, they must first renounce gangs and [their] gang's activities before using the sacred name of Rastafari to gain access to Rastafarian sacred order." *Id.* at 30, 32.[3]

As an initial matter, there is no underlying claim that remains in this action based on defendant Stewart (or any other official) allowing gang members to interfere with plaintiffs' ability to practice their religion. *See Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985) ("Only after an action has been commenced can preliminary injunctive relief be obtained. . . . Herein, Stewart filed a complaint in the district court in October, 1983, alleging discrimination in employment based on conduct of the type asserted in his 1980 EEOC claims, and thereby commenced an action pertaining to the then alleged discriminatory conduct. His July, 1984 motion for preliminary injunctive relief, claiming discrimination and retaliation based on his suspension without pay in May, 1984, presents issues which are entirely different from those which were alleged in his original complaint. Since Stewart neither filed a separate complaint in the district court relating to his suspension without pay and based upon his MSPB action, . . . nor sought to avail himself of the liberal rules which

---

[3] Walker also argues that the Court's dismissal of his Section 1983 claims based on alleged wrongdoing that he experienced as a result of certain policies and procedures implemented by DOCCS between 1991 and 2011, under the oversight of Abuna Foxe, effectively prevents him and Mclean from being "able to obtain all the necessary facts and documentary evidence" showing that Foxe actively took steps to disallow gangs and gang activity within "the Church or the Rastafarian religious and spiritual movements." Dkt. No. 24-1 at 28-29. For the sake of clarity, the Court's dismissal of certain claims as untimely in the June 2023 Order does not prevent plaintiffs from seeking relevant discoverable information with respect to any remaining claims in this action.

would have allowed for the amendment of his original October, 1983 complaint, we hold that no jurisdictional basis existed upon which the district court herein could have issued its preliminary injunctive relief."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("It is self-evident that Devose's motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of Devose's [Section] 1983 lawsuit. To the contrary, Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (explaining that the plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint "); *Davidson v. Scully*, 914 F. Supp. 1011, 1016 (S.D.N.Y. 1996) ("Plaintiff complains that his furnishings and supplies are inadequate and this interferes with his ability to prepare his cases. Although argued as a motion for a preliminary injunction, plaintiff in fact has moved for an order unrelated to the merits of his underlying claims, because there is no actual controversy between the parties before the Court regarding the adequacy of plaintiff's furnishings and supplies."); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (demonstrating that a motion for preliminary injunction alleging use of excessive force and denial of medical care by non-

parties would be denied where complaint alleged denial of mental health care and proper conditions of confinement).

Moreover, insofar as Walker seeks injunctive relief that prevents defendant Stewart from appointing gang members as facilitators and/or participating in Rastafarian services, he has failed to explain how he and Mclean will be irreparably harmed in the absence of the relief that he seeks.  *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (preliminary relief cannot be founded on irreparable harm that is "remote or speculative"); *Hooks v. Howard*, No. 9:07-CV-0724, 2008 WL 2705371, at *2 (N.D.N.Y. July 3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").  In addition, Walker has failed to make any sort of showing that he is likely to succeed on the merits of a claim that allowing a gang member to be a member of the Rastafarian faith and participate in services is a violation of his constitutional rights.

For all of these reasons, Walker's request for injunctive relief is denied.

### III.     PRESERVATION REQUEST

Walker has asked the Court to issue an order directing "DOCCS officials to preserve any and all 'electronic recording (audio or videotaping) of the meeting[s] or congregate worship' and classes of the Rastafarian within all . . . DOCCS facilities."  *See* Preservation Letter at 1.

As an initial matter, service has yet to be completed on any of the named defendants. In the event one or more defendants answer to the complaint, a Mandatory Pretrial Discovery and Scheduling Order will be issued, which outlines the terms of discovery and requires the

parties to exchange certain mandatory disclosures. These disclosures may include copies of the recordings that Walker seeks, which may also be requested from counsel at the appropriate time. For these reasons, Walker's Preservation Request is denied as premature.

The Court will add only that

> anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary. "While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (citing *Turner v. Hudson Transit Lines, Inc*., 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (quoting *William T. Thompson Co. v. Gen. Nutrition Corp*., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984))). In this instance, the named defendants are likely to be represented by the Office of the New York State Attorney General, which is certainly aware of its clients' obligation to preserve relevant evidence.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Walker's motion for partial reconsideration of the June 2023 Order (Dkt. No. 24) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that Walker's motion for injunctive relief (Dkt. No. 24) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that Walker's Preservation Request (Dkt. No. 28) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that McLean advise the Court, within thirty (30) days, whether he wishes to

remain a party to this proceeding. In the event McLean fails to timely communicate with the Court, he may be dismissed as a party to this proceeding pursuant to Rule 41(b) of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiffs in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

November 6, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge