UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CARLTON WALKER,

                                  Plaintiff,                  9:23-cv-00206 (BKS/DJS)

v.

NEW YORK STATE DEPARTMENT OF CORRECTION
AND COMMUNITY SUPERVISION; JEFF MCKOY,
Deputy Commissioner of DOCCS; CHERYL MORRIS,
Director of DMFVS; MARCIA STEWART, DOCCS
Rastafarian Chaplain; WAYNE ROSE, DOCCS
Rastafarian Chaplain; BRUCE S. YELICH, Former Supt of
Bare Hill Correctional Facility; S. BARTON, Former Dep.
Supt. of Programs; Bare Hill Correctional Facility; S.
DANFORTH, Supt.; Franklin Correctional Facility; C.
TOURVILLE, Dep. Sup. of Programs; Franklin
Correctional Facility; F. QUIMBY, Dep. Supt. of Security;
Franklin Correctional Facility; and SGT. LABARGE,

                                  Defendants.
_____

**Appearances:**

*Plaintiff Pro Se:*
Carlton Walker
85-A-1559
Adirondack Correctional Facility
Box 110
Ray Brook, NY 12977

*For Defendants:*
Leticia James
Attorney General of the State of New York
Brian W. Matula
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.       INTRODUCTION**

Plaintiff pro se Carlton Walker brings this action asserting claims under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, arising from his incarceration at three New York State prisons. (*See* Dkt. Nos. 1, 44). On April 18, 2024, the Court issued an order reviewing the operative amended complaint pursuant to 28 U.S.C. § 1915A. (Dkt. No. 50). That order dismissed several claims and allowed others to proceed. (*See id.* at 31–33). Defendants then moved to dismiss the surviving claims under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 66). Plaintiff opposed the motion. (Dkt. Nos. 74, 78, 79). This matter was assigned to United States Magistrate Judge Daniel J. Stewart, who on July 10, 2025 issued a Report-Recommendation, described in further detail below, recommending that Defendants' motion be granted in part and denied in part. (Dkt. No. 81).

The parties have filed objections to the Report-Recommendation. (Dkt. Nos. 82, 83). Defendants have responded to Plaintiff's objections, (Dkt. No. 84), and Plaintiff has filed a reply, (Dkt. No. 86). Plaintiff has also filed a response to Defendants' objections. (Dkt. No. 85). For the reasons that follow, the Report-Recommendation is adopted in part and rejected in part.

**II.      BACKGROUND**

Plaintiff is a member of the Rastafarian faith currently incarcerated at Adirondack Correctional Facility. (Dkt. No. 44, at 12; Dkt. No. 80, at 1). This action principally arises from Defendants'—the New York State Department of Correction and Community Supervision ("DOCCS") and ten of its employees—allegedly unconstitutional conduct impeding Plaintiff's right to practice his religion. (*See generally* Dkt. No. 44). The Court incorporates by reference its

2

summary of the amended complaint set forth in the April 18, 2024 order, (Dkt. No. 50, at 5–21), as supplemented by the facts described in the discussion below.

## III. STANDARD OF REVIEW

This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections "must be specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole*, No. 06 Civ. 13320(DAB)(JCF), 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id*. To the extent a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments" in the original submission, the Court will review only for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (internal quotation marks omitted).

## IV. DISCUSSION

As an initial matter, the Court has reviewed the Report-Recommendation using the well-established standard for evaluating Rule 12(b)(6) motions, "accept[ing] as true all well-pleaded factual allegations, draw[ing] all reasonable inferences in the plaintiff's favor, and assess[ing] the

3

complaint to determine whether those allegations plausibly establish entitlement to relief."[1] *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### A. Free Exercise Claims Stemming from Rastafarian Ceremonial Restrictions

#### 1. Denial of Wax Candles, Frankincense, and Myrrh

The Report-Recommendation recommended dismissal of all Plaintiff's claims "regarding DOCCS policy changes [prohibiting the use of wax candles, frankincense, and myrrh that occurred] in 2015" as barred by the statute of limitations. (Dkt. No. 81, at 9–12). Plaintiff objects to this recommendation on multiple grounds. Specifically, he argues that, in concluding that the continuing violation doctrine did not apply to these claims, Magistrate Judge Stewart failed to consider that "each year from at least 2014[] [Defendants] have been renewing their discriminatory religious policies and practices against" Plaintiff. (Dkt. No. 83, at 9–15; *see also* Dkt. No. 86, at 2–6). Plaintiff also argues that Magistrate Judge Stewart misread the Second Circuit's decision in *Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023), (Dkt. No. 83, at 15–16), and requests that the Court consider his arguments in light of *Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999), (Dkt. No. 86, at 5–6).

Upon de novo review, and having carefully considered *Kravitz* and *Harris*, the Court agrees with Magistrate Judge Stewart's conclusion that the continuing violation doctrine does not apply.[2] *See Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022) ("[T]he [continuing violation]

---

[1] Plaintiff objects to the Report-Recommendation insofar as Magistrate Judge Stewart "overlooked" that Defendants' motion "did not identify the authority upon which it is relying or invoking to seek dismissal of the claims." (Dkt. No. 83, at 3–4). However, Defendants' notice of motion stated that they sought dismissal under Rule 12(b)(6), (Dkt. No. 66, at 1), so Magistrate Judge Stewart did not err in this respect.

[2] *Kravitz* does not affect the Court's analysis for the reasons discussed in the Report-Recommendation, (Dkt. No. 81, at 10); *Harris* is distinguishable because, as Magistrate Judge Stewart explained, (*id.* at 11), these claims derive from discrete acts that occurred on "a particular date." *Harris*, 186 F.3d at 250. Additionally, although Plaintiff further argues that Magistrate Judge Stewart's continuing violation analysis "did not make any acknowledgement" of the

4

doctrine extends exclusively 'to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment.'" (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020))). Accordingly, the Court adopts this portion of the Report-Recommendation in its entirety.[3]

### 2. Denial of Other Items

As Defendants accurately observe in another objection, (Dkt. No. 82, at 10), the Report-Recommendation did not address their arguments concerning Plaintiff's free exercise claims against Rose and Stewart stemming from the denial of wooden picture frames and a Taboo cover, (Dkt. No. 66-1, at 7–8; *see* Dkt. No. 81, at 7–12). Plaintiff has not objected to this omission or otherwise addressed it in his response to Defendants' objections. (*See generally* Dkt. Nos. 83, 85).

Reviewing this aspect of the Report-Recommendation de novo, the Court agrees with Defendants that the Report-Recommendation failed to address their arguments, and that Plaintiff failed to sufficiently allege Rose's and Stewart's personal involvement as to these claims. *See, e.g.*, *Alexander v. City of Syracuse*, 132 F.4th 129, 160 (2d Cir. 2025); *Kravitz*, 87 F.4th at 129. The amended complaint explained that Plaintiff "desire[d] to have the Itrates of His Majesty and the Queen to be in wooden frames[] for use on the Taboo, . . . and to have [a] cover for the Taboo when not in use," to "enable [Plaintiff] and the [c]ommunity of Rastafarians to worship in a dignif[ied] way." (*See* Dkt. No. 44, at 239–40). However, it continued, "the most [Rose and Stewart] would do or did[] was to send pictures . . . not in any frame." (*Id.*). These allegations do

---

Court's April 18 order, (*see* Dkt. No. 85, at 4–12), the Court in that order explicitly "expresse[d] no opinion as to whether these claims [could] withstand a properly filed dispositive motion," (Dkt. No. 50, at 21).

[3] The Court therefore does not address the parties' additional arguments concerning this portion of the Report-Recommendation, including their contention that Magistrate Judge Stewart should have considered documents outside the amended complaint. (*See* Dkt. No. 82, at 8–10; Dkt. No. 83, at 2–9).

not explain whether Plaintiff requested frames and a cover, whether those requests were denied, or who denied the requests. Thus, they do not plausibly allege that Rose or Stewart acted "with at least deliberate indifference in depriving [him] of the ability to engage in a religious practice." *See Kravitz*, 87 F.4th at 129; *cf. Harnage v. Guadarrama*, No. 3:24-cv-1858, 2025 WL 1332988, at *5, 2025 U.S. Dist. LEXIS 87007, at *12 (D. Conn. May 7, 2025) ("The Second Circuit has confirmed that a defendant's 'isolated acts of negligence' do not violate an individual's free exercise of religion." (quoting *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023) (per curiam))). The Court accordingly dismisses these free exercise claims.

### B. Free Exercise and Establishment Claims Stemming from Inadequate Oversight

The Report-Recommendation next recommended dismissal of Plaintiff's free exercise and establishment claims against Rose and Stewart for their allegedly inadequate oversight of the Rastafarian community, allowing gang members to participate in religious events for improper purposes. (Dkt. No. 81, at 12–14). It reasoned that such claims failed because the complaint did not (1) allege that "Rose or Stewart had direct knowledge of individuals seeking to join a facility Rastafarian community for improper reasons," or (2) explain how either "was supposed to make judgments about who were and were not proper Rastafarians." (*Id.* at 13).

Plaintiff objects to both conclusions, contending that Magistrate Judge Stewart considered only a portion of his detailed complaint which was "not a fair and . . . accurate representation of [his] claim on [t]he issue in question." (*See* Dkt. No. 83, at 16–23). Specifically, as to Magistrate Judge Stewart's first conclusion, he argues that "DOCCS and its officials" were made aware of the gang members' joining Rastafarian activities for improper purposes through his grievances, and allegations in an unrelated lawsuit. (*See id.* at 18–19, 21–22

6

(citing *Hamilton v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312, 2019 WL 2352981, 2019 U.S. Dist. LEXIS 92793 (N.D.N.Y. June 4, 2019))).

Reviewing this conclusion de novo and considering all the relevant allegations in the amended complaint, the Court concludes that Plaintiff failed to plausibly allege that Rose or Stewart had any reason to be aware of the gang members joining Rastafarian activities for improper purposes. Plaintiff's conclusory allegation that he submitted grievances does not explain how Rose and Stewart would have been aware of the grievances given that they did not work at his facility. And even assuming the Court could properly consider the allegations made in the unrelated lawsuit Plaintiff cites, none of the conduct described in that case (in which Rose and Stewart were parties) took place at any of the facilities where Plaintiff was incarcerated. *See generally Hamilton*, 2019 WL 2352981, at *2–6, 2019 U.S. Dist. LEXIS 92793, at *3–17.

The amended complaint therefore does not sufficiently establish Rose's or Stewart's personal involvement. *See Kravitz*, 87 F.4th at 129 (explaining that, to show personal involvement in the free exercise context, a plaintiff must demonstrate that a defendant acted "with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice"); *cf. New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d Cir. 2025) (per curiam) ("The Establishment Clause prevents [government action] that ha[s] the purpose or effect of advancing or inhibiting religion." (internal quotation marks omitted)). The Court adopts this portion of the Report-Recommendation in full and dismisses Plaintiff's inadequate oversight claims. Accordingly, it declines to consider Magistrate Judge Stewart's alternative conclusion concerning Defendants' inability to make judgments about who was a "proper" Rastafarian, (*see* Dkt. No. 81, at 13–14), as well as Plaintiff's objections to that conclusion, (Dkt. No. 83, at 19–21, 22–27).

Defendants also object to the Report-Recommendation's analysis of the claims arising from conduct that occurred in January and February 2024. (Dkt. No. 82, at 6–8; *see* Dkt. No. 81, at 14). They accurately note, however, that this conduct is encompassed within Plaintiff's inadequate oversight claims. (Dkt. No. 82, at 6 n.1; *see* Dkt. No. 44, at 335–36, 340–41). Having already determined that these claims must be dismissed, the Court does not adopt this portion of the Report-Recommendation.[4]

### C. Free Exercise and Establishment Claims Stemming from Facilitator Assignments

The Report-Recommendation recommended denying Defendants' motion as to Plaintiff's free exercise and establishment claims stemming from facilitator assignments, reasoning that Defendants provided only the July 2014 version of DOCCS Directive 4202, presented "arguments about the meaning of the terms of the Directive that are perhaps not well suited to resolution on a motion to dismiss, [and relied] on a version of the Directive that was not in effect during the entire time period covered by Plaintiff's allegations." (Dkt. No. 81, at 15). However, as Defendants correctly note, they did provide all the relevant versions of Directive 4202. (Dkt. No. 82, at 3–5; *see* Dkt. No. 66-4, at 1, 12, 25). The Court therefore rejects this portion of the Report-Recommendation and addresses each of Defendants' arguments presented in their motion to dismiss as to these claims.

---

[4] Defendants also object to the Report-Recommendation's failure to address their arguments related to Plaintiff's claims "concerning [Rose's and Stewart's] role in overseeing religious programs and practices at correctional facilities." (Dkt. No. 82, at 10). They do not specify whether those arguments were directed towards the ceremonial restrictions claims, or the inadequate oversight claims. (*Compare* Dkt. No. 66-1, at 8–9 (presenting these arguments with others related to the ceremonial restrictions claims), *and* Dkt. No. 82, at 10 (same), *with* Dkt. No. 66-1, at 9 (characterizing the relevant claims as related to Rose's and Stewart's "oversight" of religious programming), *and* Dkt. No. 82, at 10 (similar)). In any event, both sets of claims must be dismissed on alternative grounds, so the Court does not address this objection.

### 1. Claims Concerning Bare Hill

Plaintiff's facilitator assignment-related claims stemming from his imprisonment at Bare Hill concern (1) the denial of Plaintiff's multiple requests to serve as a facilitator; (2) periods of time when there was no facilitator, resulting in all Rastafarian-related activities ceasing; and (3) the appointment of facilitators who were unable, or refused, to properly fulfill their responsibilities. (*See, e.g.*, Dkt. No. 44, at 119–20, 123–39, 185–94).

First, Defendants argue that Yelich and Barton are entitled to qualified immunity as to these claims, and, in the alternative, that these claims are time barred. (Dkt. No. 66-1, at 16–20). The Court declines to consider these arguments because they are inadequately briefed. *See United States v. Fayton*, 704 F. Supp. 3d 449, 453 (S.D.N.Y. 2023) (citing *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013)). As to qualified immunity, Defendants cite only one Second Circuit case that did not concern First Amendment religion claims. (*See* Dkt. No. 66-1, at 16, 18 (citing *Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004)). And even were Yelich and Barton entitled to qualified immunity as to the denial of Plaintiff's applications to be a facilitator—a determination which would be premature at this stage—such immunity would not apply to the other aspects of Plaintiff's Bare Hill facilitator claims.

As to timeliness, Defendants cite no authority to support their assertions that Plaintiff could have challenged the denial of his facilitator application in an Article 78 proceeding, or that the statute of limitations for such a claim applies in the § 1983 context. (*See* Dkt. No. 66-1, at 18–20 & n.8). Further, their argument relies on a document not attached to the complaint—DOCCS Directive 4933—to assert that "the only incidents that would have been timely[] are those taking place in a 17-day window between February 16, 2020 and March 4, 2020." (*Id.* at 19 & n.7; *see* Dkt. No. 66-5). But Defendants provide no explanation as to why the Court may consider the document on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). And even could the

9

Court consider it, dismissal would still be inappropriate because the directive's existence alone does not establish that it was followed. At this stage, the Court therefore declines to dismiss these claims against Yelich and Barton.

Second, Defendants argue that Plaintiff has not adequately pleaded Rose's and Stewart's personal involvement as to these claims. (Dkt. No. 66-1, at 23–24). The Court agrees. The amended complaint principally alleged only that these Defendants took a "hands-off[] approach to prison officials . . . continuously approving" unqualified facilitators; that Abuna Foxe "personally participate[d] in" selecting facilitators, so there was "no reason to believe that [Stewart did] not posses[s] the same or similar authority"; that Rose and Stewart provided no "assistance" or "oversight" to facilitators in developing lesson plans; and that DOCCS officials generally failed to implement procedures to prevent unqualified individuals from becoming facilitators. (*See* Dkt. No. 44, at 182–195, 198–202, 247, 330–31). Additionally, DOCCS Directive 4202 does not reflect that Rose and Stewart had any role in the process of approving facilitators.[5] (*See* Dkt. No. 66-4, at 23, 24). In light of these allegations, the amended complaint fails to plausibly allege Rose's and Stewart's personal involvement. *See Kravitz*, 87 F.4th at 129; *Iqbal*, 556 U.S. at 678–79. Accordingly, the Court dismisses these claims.

Finally, Defendants argue that the Bare Hill facilitator claims against Morris and McKoy should be dismissed for lack of personal involvement, or, alternatively, as untimely. (Dkt. No. 66-1, at 24–25). As to McKoy—a DOCCS deputy commissioner who never worked at Bare Hill

---

[5] As the amended complaint explained, Directive 4202 established DOCCS's "protocol" for appointing and removing facilitators. (*See* Dkt. No. 44, at 185). Although this directive was not attached to the operative complaint and instead provided by Defendants, the Court may consider it in ruling on the Rule 12(b)(6) motion. A "document is integral to the complaint"—and as a result may be considered on such a motion—if "in drafting the complaint" the plaintiff "relie[d] heavily upon [the document's] terms and effect." *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (first quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); then citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Here, the amended complaint quotes the directive at length and relies on its terms as part of the basis for the facilitator-related claims, including for establishing which Defendants had authority to appoint facilitators. (*See* Dkt. No. 44, at 182–83, 185–94, 199–202).

10

and had no role in selecting facilitators under Directive 4202, *see* (Dkt. No. 66-4, at 23)—the Court agrees that Plaintiff has failed to sufficiently allege personal involvement. *Iqbal*, 556 U.S. at 678–79. However, at this time, the Court declines to dismiss Plaintiff's claims against Morris for lack of personal involvement given Directive 4202's instruction that facility superintendents consult her when approving facilitator assignments. (*See* Dkt. No. 66-4, at 23). Although Defendants also argue in the alternative that the Bare Hill claims against Morris are untimely, the Court will not consider that argument for the same reasons discussed above. *See Fayton*, 704 F. Supp. 3d at 453.

In summary, the Court grants Defendants' motion to dismiss Plaintiff's free exercise and establishment claims stemming from facilitator assignments at Bare Hill as to Rose, Stewart, and McKoy, but denies the motion as to Yelich, Barton, and Morris.

## 2. Claims Concerning Franklin

Plaintiff's facilitator assignment-related claims stemming from his imprisonment at Franklin concern (1) his removal from his position as facilitator at Franklin; (2) Defendants' refusal to appoint other qualified individuals as facilitators; and (3) Defendants' appointment of facilitators who were unable, or refused, to properly fulfill their responsibilities. (*See, e.g.*, Dkt. No. 44, at 162–79, 181–85, 243–44).

As to these claims, Defendants first argue that Danforth, Tourville, Quimby, and Barton[6] are entitled to qualified immunity for the same reasons as to the Bare Hill facilitator claims. (Dkt. No. 66-1, at 21–22). For the reasons explained above, the Court again declines to consider Defendants' qualified immunity arguments. *See Fayton*, 704 F. Supp. 3d at 453.

---

[6] At Bare Hill, Barton served as the Deputy Superintendent for Program Services; at Franklin, he served as the First Deputy Superintendent. (Dkt. No. 44, at 11, 163).

11

Defendants next argue that Plaintiff failed to allege personal involvement as to Barton, Tourville, and Quimby. (Dkt. No. 66-1, at 22). The Court agrees that the amended complaint, (*see* Dkt. No. 44, at 163–67, 177, 181), fails to plausibly allege that Barton or Quimby had any role in facilitator assignments at Franklin. *See Iqbal*, 556 U.S. at 678–79. Nor does Directive 4202 appear to confer on them any such authority.[7] (*See* Dkt. No. 66-4, at 23–24, 37–38). However, Directive 4202 provided that Tourville, as the Deputy Superintendent for Program Services, was the official to which requests to remove a facilitator were submitted. (*See* Dkt. No. 66-4, at 24, 38). At this stage, the Court thus declines to dismiss Plaintiff's claim against Tourville for lack of personal involvement.

Defendants further argue that to the extent any of the claims of these Defendants are based on Plaintiff's removal from his facilitator position, they are time barred. (Dkt. No. 66-1, at 22). The Court again declines to reach these arguments because they are inadequately briefed. *See Fayton*, 704 F. Supp. 3d at 453. Although in this section of their brief Defendants cite Article 78 generally and another New York statute concerning the statute of limitations for proceedings "against a body or officer," *see* N.Y. C.P.L.R. § 217(1), they provide no caselaw supporting their assertions that Plaintiff could have challenged his removal as facilitator in an Article 78 proceeding, or that the cited statute of limitations provision applies to these facts. (*See* Dkt. No. 66-1, at 22). Nor do Defendants explain how Plaintiff's Franklin facilitator-based claims not relating to his removal would be time barred. (*See id.*).

Finally, for the same reasons discussed above as to the Bare Hill facilitator claims, the Court grants Defendants' motion as to Plaintiff's Franklin facilitator assignment-related claims

---

[7] To the extent the conduct underlying Plaintiff's claims concerning facilitator assignments at Franklin took place after DOCCS implemented an updated version of Directive 4202, the Court notes that the two versions are materially identical. (*Compare* Dkt. No. 66-4, at 23–24, *with id.* at 37–38).

against Rose, Stewart, and McKoy, but denies the motion as to Morris. Thus, in summary, the Court grants Defendants' motion to dismiss Plaintiff's free exercise and establishment claims stemming from facilitator assignments at Franklin as to Barton, Quimby, Rose, Stewart, and McKoy, but denies the motion as to Danforth, Tourville, and Morris.

### D. Claims Against LaBarge

The Report-Recommendation also recommended dismissal of Plaintiff's claims against Defendant LaBarge as untimely.[8] (Dkt. No. 81, at 15–17). In doing so, it reasoned that Plaintiff had not established that the statute of limitations was tolled while he exhausted his administrative remedies. (*Id.* at 16–17). Plaintiff objects to this conclusion, arguing that Magistrate Judge Stewart did not consider two of his submissions detailing his efforts to file grievances, as well as his request for Defendants to provide records reflecting those efforts. (Dkt. No. 83, at 27–28; *see also* Dkt. Nos. 78, 79).

As Magistrate Judge Stewart explained, the Second Circuit has held that the mandatory exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), tolls an incarcerated plaintiff's statute of limitations "during the time period [that he] is exhausting his administrative remedies." *Gonzalez v. Hasty*, 651 F.3d 318, 319 (2d Cir. 2011). The statute of limitations is tolled only while "a prisoner is actively exhausting his administrative remedies." *Middlebrooks v. Bradt*, 794 F. App'x 72, 74 (2d Cir. 2019) (cleaned up); *see also Gonzalez*, 651 F.3d at 322 n.2.

Here, the Court lacks sufficient information to determine whether equitable tolling applies to Plaintiff's claims against LaBarge. Although Plaintiff's opposition to the motion did

---

[8] Although the Report-Recommendation referred only to Plaintiff's Fourth and Eighth Amendment claims against LaBarge, (*see* Dkt. No. 81, at 15), the Court's analysis addresses all four of Plaintiff's claims against LaBarge arising out of alleged conduct that occurred on March 4 and 5, 2020, (*see* Dkt. No. 50, at 31).

13

not explain when he filed his grievances or when he received responses from Defendants, (*see* Dkt. No. 74, at 31–35), Plaintiff also submitted two letters addressing this issue, (*see* Dkt. Nos. 78, 79). Given his pro se status, the Court rejects Defendants' argument, (Dkt. No. 84, at 3), that it should not consider these letters. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

The first letter explained that Plaintiff lacked access to "documents concerning [his] efforts through the [i]nmate [g]rievance process" and asked that the Court order Defendants to provide "documents . . . concerning [his] [g]rievances and [Defendants'] responses and[/]or lack of responses to [his] grievances and appeals." (Dkt. No. 78, at 2, 3). The second letter, supported by documentation, explained that Plaintiff filed a grievance on March 22, 2020; appealed the grievance committee's failure to act on that grievance to the superintendent on May 9, 2020; and appealed the superintendent's failure to act to the DOCCS commissioner on June 10, 2020. (*See* Dkt. No. 79, at 2, 4, 6, 24). The letter further stated that he had never "receive[d] a [g]rievance number or a [g]rievance decision," despite "tr[ying] everything within [his] means." (*Id.* at 2–3).

Defendants argue that even assuming the statute of limitations was tolled from March 22 to July 10, 2020—based only on the documentation to which Plaintiff had access—his claims would still be untimely. (Dkt. No. 84, at 3–4). But they have not provided Plaintiff or the Court with additional documentation to establish whether and when Plaintiff's grievances were decided. So the Court lacks sufficient information to determine the time period during which Plaintiff was "actively exhausting" his administrative remedies under the PLRA. *Middlebrooks*, 794 F. App'x at 74. Mindful of the Second Circuit's instruction that "equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record," *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023), the Court

14

declines to dismiss Plaintiff's claims against LaBarge as time barred at this stage.[9] The Court therefore rejects this portion of the Report-Recommendation.

### E. Retaliation Claim Against Barton

The Report-Recommendation next recommended dismissal of Plaintiff's First Amendment retaliation claim against Defendant Barton as "entirely conclusory." (Dkt. No. 81, at 17–19). Plaintiff objects, arguing that Magistrate Judge Stewart overlooked certain allegations in the amended complaint and citing the additional allegations he believes are sufficient. (Dkt. No. 83, at 29–32 (citing Dkt. No. 44, at 139, 157–58)).

Even assuming that this objection is specific enough to warrant de novo review, having carefully considered the cited portions of the amended complaint, the Court agrees with Magistrate Judge Stewart. To succeed on a First Amendment retaliation claim, Plaintiff must show, among other things, "that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). Here, however, the amended complaint contains only conclusory statements that Plaintiff's letter containing protected speech "got into [Barton's] hands," and that Plaintiff objected to Barton presiding over the disciplinary hearing based on his belief that Barton was part of a "conspiracy" to falsify a report to get Plaintiff transferred from Bare Hill. (Dkt. No. 44, at 139, 157–58). These allegations do not plausibly allege that Barton was aware of Plaintiff's protected speech, much less that he took an adverse action against Plaintiff because of that speech. *See Iqbal*, 556 U.S. at 678–79. Accordingly, the Court adopts this portion of the Report-Recommendation in full and dismisses this claim against Barton.

---

[9] Likewise, the Court does not at this time address Plaintiff's alternative objection to the Report-Recommendation's timeliness analysis. (*See* Dkt. No. 83, at 29).

### F.    RLUIPA Claim

Finally, the Report-Recommendation declined to recommend dismissal of Plaintiff's RLUIPA claim for injunctive relief on the merits, or as time barred. (Dkt. No. 81, at 20). Instead, it recommended dismissal of that claim as moot following Plaintiff's transfer from Franklin to Adirondack. (*Id.* at 21). Plaintiff objects to this conclusion, arguing that even after his transfer DOCCS continues to enforce discriminatory polices "not set at the [f]acility level." (*See* Dkt. No. 83, at 32–37). Defendants' objections have not addressed this claim. (*See generally* Dkt. No. 82).

Upon de novo review, the Court finds that the RLUIPA claim should not be dismissed as moot. To be sure, prisoners ordinarily "may not seek injunctive relief against prison officials after transfer." *Booker v. Graham*, 974 F.3d 101, 107–08 (2d Cir. 2020) (citing *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011)). Their claims for such relief thus become moot following transfer. *Id.* at 107; *see also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam). But when the conduct underlying a RLUIPA claim continues in a prisoner's new facility, and is implemented pursuant to a "statewide policy," the claim is not mooted by the prisoner's transfer. *See Smith v. Artus*, 522 F. App'x 82, 84 (2d Cir. 2013); *cf. Booker*, 974 F.3d at 108 (noting that the plaintiff's moot RLUIPA claims did not challenge a generally applicable DOCCS policy, but rather how DOCCS "applied that policy to" the plaintiff at his previous facility).

Here, Plaintiff's RLUIPA claim is based at least in part on DOCCS's statewide policy of prohibiting wax candles, frankincense, and myrrh from Rastafarian religious services. He asserts that these prohibitions have continued at Adirondack. And indeed, the claim is asserted against DOCCS, not any individual prison official at Franklin. (*See* Dkt. No. 50, at 33). Plaintiff therefore retains "a legally cognizable interest in the outcome" of this dispute, so the Court

16

rejects this aspect of the Report-Recommendation and declines to dismiss this claim as moot.[10] *Stafford v. IBM Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

### G. Remainder of the Report-Recommendation

The Court has reviewed the remainder of the Report-Recommendation, as to which there was no specific objection, for clear error and found none. Accordingly, the Court adopts those portions of the Report-Recommendation.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 81) is **ADOPTED** in part and **REJECTED** in part as set forth above; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 66) is **DENIED** as to the following claims: (1) Plaintiff's free exercise and establishment claims concerning facilitator assignments during his incarceration at Bare Hill against Yelich, Barton, and Morris; (2) Plaintiff's free exercise and establishment claims concerning facilitator assignments during his incarceration at Franklin against Danforth, Tourville, and Morris; (3) Plaintiff's claims against LaBarge under the Free Exercise Clause, under the Fourth Amendment, under the Eighth Amendment, and for First Amendment retaliation; and (4) Plaintiff's RLUIPA claim against DOCCS; and it is further

**ORDERED** that Defendants' motion is **GRANTED** in all other respects; and it is further

---

[10] Defendants have not objected to this portion of the Report-Recommendation. So at this time, the Court will not address their motion's alternative arguments in support of dismissal, including that the RLUIPA claim is time barred. (*See* Dkt. No. 66-1, at 28–29).

**ORDERED** that each of Plaintiff's claims not listed above are **DISMISSED with prejudice**, and the Clerk is respectfully requested to terminate McKoy, Rose, Stewart, and Quimby as defendants; and it is further

**ORDERED** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge